UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLENN M. HILL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-3451** |
| **ROBERT TANNER, ET AL.** | **SECTION: "N"(3)** |

### REPORT AND RECOMMENDATION

Plaintiff, Glenn M. Hill, a state prisoner, filed this *pro se* and *in forma pauperis* federal civil action pursuant to 42 U.S.C. § 1983. He sued Robert Tanner, James LeBlanc, Billy Anderson, Jody Knight, Keith Bickham, and Mark Hollingsworth. Plaintiff complains that his rights are being violated by the fact that, at certain predesignated times, all televisions on his prison unit are turned to a station showing religious services.

### I. Screening Standards

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> >   (i)    is frivolous or malicious;
> >   (ii)   fails to state a claim on which relief may be granted; or
> >   (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[1] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim upon which relief may be granted.

## II.  Plaintiff's Claim

In his complaint, plaintiff states his claim as follows:

> On January 11, 2018, the defendants instituted a mandatory policy which require correctional officers to turn all cellblock televisions to a channel where various religious services would be streamed.  Which requires all offenders watching television to be exposed to religious services.  The defendants continually violate my Free Exercise and Establishment Clauses rights of the First Amendment of the U.S. Constitution.[2]

He attached to his complaint a copy of an email from Jody Knight to various prison officials dated January 11, 2018.  That email, which is titled "Streaming Religious Services (revised)," states:

> Effective immediately Religious Services will be streamed to Sun Unit.  The time and day of these services are listed below.  These are televised religious callouts and it is mandatory that these services are on all Sun Unit televisions.
> Chaplain Orderlies will be responsible to ensure that the transmitting equipment & camera are on to provide a signal to Sun Unit.  *Please note that if a Microphone is not used then there will be no audio on the station.
> The Sun Unit Key Officer will be required change [sic] the Tier Station to Channel 4 in the Control Island TV Room at the times listed below.
> All services on channel 4:
>
> 12:30 PM – 1:30 PM – Friday (Islamic)
> 9:00 AM – 10:30 AM – Sunday (Non Denominational)
> 12:30 PM – 1:30 PM – Thursday (Catholic recorded)[3]

As noted, plaintiff asserts that the challenged policy violates his right to religious freedom under the First Amendment to the United States Constitution.  Regarding such claims, the United States Supreme Court has held:

---

[1] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).
[2] Rec. Doc. 1, p. 5.
[3] Id. at p. 7.

3

> The Religion Clauses of the First Amendment provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people.

Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).

### A. The Establishment Clause

Regarding claims brought under the First Amendment's Establishment Clause, the United States Fifth Circuit Court of Appeals recently noted that "[t]he Supreme Court generally applies at least one of three tests under the Establishment Clause …." American Humanist Association v. McCarty, 851 F.3d 521, 525 (5th Cir.) (footnote omitted), cert. denied, 138 S. Ct. 470 (2017). Those tests are commonly referred to as the "Lemon test,"[4] the "endorsement test," and the "coercion test." However, when applying any of those tests, courts must also always remember that "[i]t is well established that prisoners must be accorded 'reasonable opportunities' to exercise their religious freedom guaranteed by the First Amendment." Mumin v. Phelps, 857 F.2d 1055, 1056 (5th Cir. 1988). Therefore, the question posed by the instant case is whether prison officials violated any of the three Establishment Clause tests by enacting the challenged policy in their attempt to comply with their constitutional obligation to guarantee the freedoms of their religious prisoners. For the following reasons, the Court finds that they have not.

### 1. The "Lemon Test"

Under the "Lemon test," "for a government practice to be constitutional, it must (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not

---

[4] That name arises from the fact that this first test was formulated by the Supreme Court in Lemon v. Kutzman, 403 U.S. 602 (1971).

4

foster excessive government entanglement with religion." American Humanist Association, 851 F.3d at 525 n.10.

In Henderson v. Berge, 362 F. Supp. 2d 1030 (W.D. Wis. 2005), aff'd, 190 Fed. App'x 507 (7th Cir. 2006), that court held that a similar practice of providing religious programming over closed-circuit televisions did not run afoul of "the Lemon test."

As to the first prong of the "Lemon test," the Henderson court noted that "it may seem anomalous to say that accommodating religion is a secular purpose …." Id. at 1033.  However, the court found that was in fact the case regarding the prison practice.  The court noted that "there is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." Id. (quotation marks omitted).  The court therefore concluded that "[t]o the extent that the prison's television programming merely facilitates opportunities for inmates to engage in the free exercise of religion, it has a secular purpose." Id.  The same reasoning applies to plaintiff's challenge to the policy in this case.

As to the test's second prong, the Henderson court noted that the practice in that case neither impermissibly advanced nor inhibited a particular religion. Id.  Again, the same is true with respect to the instant policy, in that the challenged policy requires transmission of a variety of services:  Islamic, Catholic, and nondenominational services.[5]

As to the third prong, the Henderson court found that the practice involved no excessive entanglement with religion, noting:

---

[5] Moreover, the mere fact that the services of *all* existing religions are not transmitted is not determinative.  "A prison is not permitted to favor a particular religious belief but it need not provide identical facilities or personnel for every religious group within a prison." Henderson, 362 F. Supp. 2d at 1033.  See also Gutierrez v. Corrections Corporation of America, 559 Fed. App'x 406, 408 (5th Cir. 2014) ("If CCA were required to provide every prisoner of a particular faith with access to a religion-specific television channel because TBN [a nondenominational channel] is broadcast into CCA facilities, that might spawn a cottage industry of litigation and could have a negative impact on prison staff, inmates, and prison resources." (quotation marks omitted)).

5

> [P]roviding religious programming over the facility's television is not the "kind" of entanglement forbidden under the third test of Lemon, but rather a means by which defendants can carry out their responsibilities under the free exercise clause of the First Amendment. Lynch v. Donnelly, 465 U.S. 668, 673, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) ("Nor does the Constitution require complete separation of church and state; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility towards any."). Persons confined to a secure facility must depend on the government for access to their religion. Without any evidence that defendants censor, monitor or alter the programming on the Christian station or require inmates to watch it, plaintiff cannot show that defendants violated the establishment clause while trying to give content to the free exercise rights of inmates.

Henderson, 362 F. Supp. 2d at 1034. Again, the same is true here.

Accordingly, adopting the Henderson court's analysis, the undersigned finds that the policy challenged herein is not unconstitutional under the "Lemon test."

## 2.  The "Endorsement Test"

Regarding the "endorsement test," the United States Fifth Circuit Court of Appeals has explained:

> A government unconstitutionally endorses religion whenever it appears to take a position on questions of religious belief, or makes adherence to a religion relevant in any way to a person's standing in the political community. The government creates this appearance when it conveys a message that religion is favored, preferred, or promoted over other beliefs.

American Humanist Association, 851 F.3d at 525 n.11 (citation, quotation marks, and brackets omitted). The challenged policy likewise does not run afoul of this test.

First, the policy cannot reasonably be interpreted as an endorsement of religion. Rather, as noted, prison officials have no choice as to whether they will guarantee the religious freedoms of their religious prisoners – they have a constitutional duty to do so. This neutral action on their part to comply with that mandatory duty can in no way be construed as an endorsement of either a particular religion or religion in general. Second, the policy likewise does not take a position on any questions of religious belief or practice. Third, it does not make religious adherence a

6

precondition for humane treatment or in any way reward participating prisoners with a favorable status within the prison population.

### 3.  The "Coercion Test"

Under the "coercion test," "unconstitutional coercion occurs where (1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors." American Humanist Association, 851 F.3d at 525 n.12 (quotation marks omitted).  The challenged policy also is not unconstitutional under this test.  Although religious services are transmitted over all of the unit's televisions at the predesignated times, there is no suggestion that any inmate is required to actually watch the programs during the negligible three and one-half hour period of time they are transmitted each week.  Moreover, because prisoners have "no constitutionally protected right to watch television," Gutierrez v. Corrections Corporation of America, 559 Fed. App'x 406, 408 (5th Cir. 2014), the mere fact that they are unable to watch some other program of their choosing during that brief period obviously cannot rise to the level of a constitutional deprivation.

Therefore, for all of these reasons, the Court finds that the challenged policy does not violate the Establishment Clause under any of the three applicable tests.

### B.  The Free Exercise Clause

Although plaintiff also references the Free Exercise Clause in the statement of his claim, it is clear that he states no cognizable claim under that clause.  It is beyond debate that a criminal conviction does not result in a loss of an individual's right to exercise his religion.  As the United States Fifth Circuit Court of Appeals has explained: "Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment 'directive that no law shall prohibit the free exercise

of religion.'" Butts v. Martin, 877 F.3d 571, 584 (5th Cir. 2017) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

Here, however, plaintiff does not claim that he is being denied the opportunity to exercise any religion. Rather, his claim is the opposite: he objects that he is being passively exposed to his fellow prisoners' exercise of their religions. However, neither the First Amendment nor any other constitutional provision imposes on prison officials an obligation to insulate a prisoner from the religious views of his fellow prisoners. See Gray v. Johnson, 436 F. Supp. 2d 795, 801 (W.D. Va. 2006).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of May, 2018.

*Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**